### HIRAM WHEELOCK *vs.* RUFUS HASTINGS.

Though an officer, who sells attached goods to the attaching creditor, does not receive money therefor, yet if he wrongfully applies the sum for which they are sold, towards the discharge of such creditor's execution, by taking his receipt thereon for such sum, he is liable, in an action for money had and received, to the party legally entitled to the proceeds of the sale.

Where attached goods are sold by consent of parties, pursuant to the Rev. Sts. *c.* 90, § 57, and the attaching creditor does not recover judgment until after the first publication of notice that a warrant has issued, under *St.* 1838, *c.* 163, against the estate of the owner of such goods, the right to the proceeds of the goods thus sold passes to the assignee by the assignment of such owner's estate.

In a suit prosecuted by an assignee of an insolvent debtor, under *St.* 1838, *c.* 163, for any debt, right, &c. due or belonging to such debtor, the assignment is conclusive evidence of the plaintiff's authority to sue, although there may have been irregularities and errors in the preliminary proceedings: The question whether there are irregularities and errors in those proceedings, sufficient to supersede the assignment, may be brought before the supreme judicial court, on petition by any person aggrieved, and the assignment will thereupon be adjudged, once for all, to be valid or invalid.

Under § 19 of said statute, a judge of probate or master in chancery may, on petition of a creditor, lawfully issue a warrant appointing a messenger to take possession of the estate of the debtor, without first giving the debtor notice of such petition.

ASSUMPSIT for money had and received. The plaintiff sued as assignee of Brigham N. Barton, under the insolvent act of 1838, *c.* 163, to recover the proceeds of a sale made by the defendant, a deputy sheriff, under the Rev. Sts. *c.* 90, § 57, of goods which he had attached in a suit brought by Edward Babbit against said Barton. Before judgment was recovered in that suit, certain creditors of Barton petitioned the judge of probate

to issue a warrant to take possession of his estate, on the ground that he had not dissolved the attachment in Babbit's aforesaid suit before the last day of the term of the court to which the process in that suit was returnable.   The judge thereupon issued such warrant, and afterwards assigned all said Barton's estate to the plaintiff.   Babbit subsequently recovered judgment in his said suit, but not till after the first publication, by the messenger, of the issuing of said warrant.   He took out a writ of execution thereon, which he delivered to the defendant, who paid to Babbit's attorney the proceeds of the goods which were attached on the original writ and sold by the defendant, and indorsed the amount of said proceeds on the execution in part satisfaction thereof.

Said goods were sold by the defendant, under an agreement made in writing by said Babbit and Barton, conformably to the Rev. Sts. *ubi sup.*   Babbit himself bought part of the goods, at the sale, for which he never paid the defendant ; but the amount thereof was allowed to the defendant, when he paid to Babbit's attorney the sum for which the attached property was sold.   The plaintiff demanded of the defendant the money sued for, before the commencement of this action.

The foregoing facts were agreed by the parties to this action, and the proceedings preliminary to the assignment of Barton's estate to the plaintiff, by the judge of probate, were also made part of the case.   The objections made by the defendant to these proceedings are stated in the opinion of the court.

This case was argued at the last October term, before the case of *Kimball* v. *Morris*, 2 Met. 573, was decided.

*Washburn*, for the plaintiff.   The St. of 1838, c. 163, § 5, makes the assignment conclusive evidence of the assignee's authority to sue for any debt due or right belonging to the insolvent debtor.   The validity of the assignment, if questioned, is to be determined by this court, as a court of chancery, on a petition or bill, as provided for in § 18 of the statute.   This was so held, only a week since, in Hampshire, in *Partridge* v. *Hannum*.   (2 Met. 569.)

The proceeds of the attached goods, that were sold by the

defendant, are to be disposed of as the goods would have been if they had remained unsold. Rev. Sts. *c.* 90, § 57. The plaintiff, therefore, as assignee, is now entitled to those proceeds, under § 5 of the insolvent law, for the benefit of all the creditors. And he may maintain an action for money had and received, though the defendant did not actually receive money for all the goods sold by him. *Emerson* v. *Baylies*, 19 Pick. 57.

*A. Bigelow*, for the defendant. It might perhaps admit of question, under § 5 of *St.* 1838, *c.* 163, whether upon an attachment's being dissolved by an assignment, any thing more passes to the assignee than the attached property itself. If the proceeds of such property were intended to be passed, it would seem that they would have been mentioned. See, as to construction of statutes, 1 Pick. 45. 16 Pick. 168. But there are more decisive objections than this, to the plaintiff's right to maintain the present action.

The assignment is indeed declared to be conclusive evidence of the assignee's authority to sue, but nothing further. It is not conclusive of his right to recover, if the proceedings are erroneous and contrary to natural right and justice. Where proceedings are unlawful and injurious to a party who has no opportunity to oppose them in their progress, he may afterwards avoid them whenever they are brought forward against him. *Downs* v. *Fuller*, 2 Met. 135. The defendant relies on this just and well established principle.

The grounds on which creditors may cause a warrant to issue against their debtor are set forth in § 19 of *St.* 1838, *c.* 163. In the present case, there was nothing like a conformity to the requisitions of that section ; as the papers, which are made part of the case, show.

It is a sufficient reason to arrest any further proceedings under this assignment, that the insolvent debtor had no notice before the warrant was issued to take all his property out of his possession. *Chase* v. *Hathaway*, 14 Mass. 222. *Central Turnpike Corporation*, 7 Pick. 13. *Hinckley's case*, 15 Pick. 447.

The jurisdiction of inferior tribunals must appear upon the face of their proceedings ; and where a special jurisdiction, out

of the course of the common law, is prescribed, if it is not strictly pursued, all is a nullity and *coram non judice*, and objection may be taken in any stage of the cause. *Hartley* v. *Hooker*, Cowp. 524. *Rex* v. *Mayor, &c. of Liverpool*, 4 Bur. 2244. *Smith* v. *Rice*, 11 Mass. 513. *Jones* v. *Reed*, 1 Johns. Cas 20. *Gilbert* v. *Columbia Turnpike Co.* 3 Johns. Cas. 107.

SHAW, C. J.    This was an action of assumpsit for money had and received, in which the plaintiff sues in the character of assignee of Brigham N. Barton, an insolvent debtor, under the insolvent law of 1838. Before any proceedings upon the insolvent law, a suit was brought in the court of common pleas by E. Babbit against said Barton, in which personal property was attached, by the defendant, then a deputy sheriff. By consent of parties, and whilst the action was pending, the property was sold, conformably to the Rev. Sts. *c.* 90, § 57, and afterwards, by force of the statute, the proceeds were held by the officer, subject to the attachment, and to be disposed of in like manner, as the property would have been disposed of, had it remained unsold. After this sale, and before judgment was obtained by Babbit, proceedings were instituted before the judge of probate, against Barton, under that provision of the insolvent act of 1838, *c.* 163, § 19, which renders a person liable to be proceeded against, whose goods or estate are attached on mesne process, for one hundred dollars or upwards, and who shall not, on or before the last day of the return term, dissolve the attachment, by giving security to pay the amount which may be recovered. Under these proceedings, a warrant was issued, and the first public notice thereof was given before judgment was recovered in the suit of Babbit, and subsequently, the assignment was made, in due form, to the plaintiff. By this assignment, and by force of the statute, § 5, all the property of Brigham N. Barton, the debtor, vested in the plaintiff as assignee, which the debtor could then convey or assign, or which might have been taken in execution, on any judgment against him, at the time of the first publication of the warrant, although the same were then attached on mesne process, as the property of the debtor.

It appears to us, therefore, very clear, that the plaintiff thus

makes out a *primâ facie* title to the property in the hands of the defendant. By force of the statute the attachment was dissolved. In that event, the property, but for the insolvent proceedings, would have gone to the debtor ; the statute providing for the sale declares, that the money shall go as the property would have gone, ·if not sold ; that is, to the debtor ; and then by force of the insolvent law, as the property of the debtor, it vests in the assignee. We think it is no objection to the action for money had and received, that the whole amount was not paid to the defendant in cash. If he sold a part of the goods to the attaching creditor, without receiving the cash, he did it at his own risk. He made himself responsible to other persons interested for cash ; he afterwards settled with the creditor, and assumed the amount, so purchased by the creditor, as cash. 'It appears to us, therefore, that the action for money had and received is the suitable and proper form of action in which to try this question.

Then, however, comes the principal question, and the only one of much difficulty in the case, arising from matter relied on by the defendant. He contends that the plaintiff has no right to sue in quality of assignee, because the proceedings have been irregular and not conformable to law. This case comes before the court upon an agreed statement of facts, and the record of the proceedings had before the judge of probate, the petition, the warrant, and all the proceedings preliminary to the assignment, are made part of the case. Making them part of the case does nothing more than bring them before the court for consideration, as they would be, if offered in evidence on a trial ; to avail, so far as they are competent evidence, and according to their legal effect, and no farther. The defendant has gone into these documents, in order to show various defects and irregularities, in the preliminary proceedings ; namely, that the petition was insufficient in form and substance ; that it did not sufficiently set forth the facts and the proof of the petitioning creditors' debt, to justify the judge of probate in issuing his warrant ; that the warrant to the messenger was not under seal ; that no notice was given to the debtor ; that the notice ordered was not

in fact given ; and that many things were recited in the warrant, as set forth in the petition, which were not in fact contained in it

We have not set forth these exceptions fully and in detail, nor have we thought it necessary to express an opinion upon each of them severally, because we think there is one sufficient answer to the whole, in the statute itself. The statute provides, § 5, that in all suits prosecuted by the assignees for any debt, demand, right, title, or interest, due or belonging to the insol vent debtor, the assignment made to them by the judge shall be conclusive evidence of their authority to sue as such as signees. Here the assignment was in due form, and recited all the facts necessary to establish the title of the plaintiff to sue as assignee, and then showing that the interest or subject matter of the suit, in this case, is the sum of money, in the hands of the deputy sheriff, and that this was an interest or right belong-ing to the insolvent debtor at the time of the first publication of the warrant, the assignment itself, by force of the statute, trans ferred that subject to the plaintiff, and enables him to recover it, for the general benefit of the creditors.

And it seems to us that it was the policy of the law, to provide that the regularity of the preliminary proceedings, and the right of the assignee to sue in his representative character, should not be called in question in every suit, in which he has occasion to proceed against the debtors of the insolvent, in order to gather in the effects. Such a course would be not only attended with great labor and expense, but another inconvenience would fol-low of still greater weight : In one suit, and before one tribu nal, an assignee might be prepared with the proofs of all the preliminary proceedings, and establish his representative capa-city to the satisfaction of the court. In another suit, for various causes, he might fail so to establish his character as representa-tive of the insolvent. The statute contemplates one entire set-tlement of the estate of the insolvent, so that all his effects shall be applied, proportionably, to the payment of all his debts. So far as the statute fails of accomplishing this object completely, it fails of accomplishing its intended purpose. Then, if the pro-ceedings are irregular, it behoves all parties, once for all, to have

43*

that matter inquired into and settled ; or if they are regular, that it may be established, once for all, and irrevocably, for the security of all persons. This cannot be done, as it appears to us, if the sufficiency of the preliminary proceedings may be inquired into and settled in each of the numerous suits, which it may be necessary to bring, in the settlement of an insolvent estate.

Nor is it necessary to the security of the rights of any one, that these inquiries should be opened in each particular suit ; because sufficient provision is made for trying and deciding the validity and legality of the proceedings, once for all, by which they may be superseded and set aside, if erroneous. Sect. 18 of the statute provides, that the supreme judicial court shall have a general superintendence and jurisdiction, as a court of chancery, of all cases arising under the act. And they have power, in all cases not otherwise specially provided for, upon the bill, petition, or other proper process of any party aggrieved by any proceedings under that act, to hear and determine the case as a court of chancery, and make such order and decree therein, as law and justice may require.

If the creditor, for whom the defendant claims to hold the money in question, is aggrieved by the proceedings, here is ample provision made, by which he may apply to this court by petition, and on showing any irregularities sufficient to supersede and set aside the assignment and the right of the plaintiff to claim under it, he will obtain an order which will relieve himself and all others who may be affected by these proceedings. Such a result would in fact be beneficial to the assignee, by deterring him from attempting to proceed in suits, when he has no legal title, and by which he might be led into great expenses.

And it appears to us, that this policy of the law is very analogous to the case of an administration of an intestate estate. The administrator must sue in his representative capacity, and must, if required, show his title to do so, by the exhibition of his letter of administration. If that is established by a decree of the judge of probate, it is conclusive, and the debtor cannot inquire into the preliminary proceedings in a probate court. and show

by evidence that the petition, presented to the judge of probate praying him to issue such letter, was insufficient, in form or substance, or that he gave no sufficient notice of administration, or that he did not, in some other respect, comply with the requisites of the law, previously to doing it. We think the legislature intended to put the right of an assignee, who is in effect the administrator of the estate of a living person, substantially on the same footing, by giving ample means to contest the validity of the assignment, by impeaching the preliminary proceedings ; but until set aside by an order or judicial decision which would abrogate and wholly annul the proceedings, the assignment should be held to be conclusive and not liable to be called in question.

A recent decision upon the construction of the English act of 6 Geo. IV. *c.* 16, " to amend the laws relating to bankrupts," seems to be in point. By § 92 of that act, if the bankrupt shall not, within two months after the adjudication, give notice of his intention to dispute the commission, &c. " the depositions taken before the commissioners at the time of, or previous to, the adjudication of the petitioning creditor's debt, and of the trading and act of bankruptcy, shall be conclusive of the matters therein respectively contained, in all actions at law, or suits in equity, brought by the assignees for any debt or demand for which the bankrupt might have sustained any action or suit." In a suit brought by the assignees of a bankrupt, it was held that the defendant could not be allowed to prove that the petitioning creditor's debt was a fraudulent contrivance between him and the bankrupt. *Young* v. *Timmins*, 1 Crompt. & Jerv. 148. Mr. Baron Bayley said, " I think that the legislature intended to prevent the agitation of such questions in cases like the present. The object of the legislature was, that the depositions should be conclusive at the trial, leaving the parties to agitate the merits of the commission elsewhere." And he also said, that it did not follow from the words of the statute, that the depositions were to be conclusive, upon a petition to the chancellor to supersede the commission.

The general provision in § 18 of the statute, for superseding

and setting aside the proceedings, we think is an answer to another exception, and perhaps to an objection to the statute itself, namely, that it does not provide that notice shall be given to the insolvent debtor himself, before a warrant issues to take his property into custody. But to understand the statute, we must consider its purpose, especially in that part of it which provides for a compulsory insolvency, at the instance of the creditors; being obviously the only case, to which the objection can apply, because, in all others, the proceedings are commenced by the insolvent himself. The object was to prevent unjust preferences; in fact to prevent all preferences, and to make an equal distribution of all the debtor's estate, before it is abstracted; and for that purpose to prevent it from being concealed or fraudulently conveyed. Had provision been made, that previous notice should be given to the debtor, and a day assigned for him to show cause why he should not be declared bankrupt, it would nave given him an opportunity to withdraw or conceal his property, or make fraudulent conveyances, by which the policy of the statute would have been defeated. Undoubtedly, where one's rights are to be so deeply affected, as they must be by taking all his property, to be administered by strangers, he ought to have notice sufficiently seasonable to enable him to prevent it, if his case is not such as to bring him within the operation of the law. To accomplish both these objects, the statute wisely provides for laying the hand of the law, in the first instance, and without warning, upon all his property, in order to secure and preserve it until other proceedings can be had; with a provision, that the debtor may immediately apply to a proper tribunal for relief, if he has good cause to show for it. In this way, the warrant to an officer, in the first instance, to take immediate possession of the debtor's property for the benefit of all his creditors, like the ordinary attachment on mesne process, at the commencement of a suit, operates as a mere sequestration, until the rights of all parties can be judicially ascertained.

*Judgment for the plaintiff.*